**Hartley Estate**

*Robert W. Lentz* and *Louis F. Retacco,* for accountant.

*Lawrence M. Aglow,* for claimant.

KURTZ, P. J., November 21, 1972.—Mary B. Hartley died August 22, 1970. Her last will and testament dated July 11, 1970, was admitted to probate. Upon the audit of her executor's account a claim was presented by Industrial Valley Plumbing and Heating Supply Company in the amount of $10,413.62 which the executor refused to honor.

Upon the hearing held to present that claim, the claimant offered into evidence a prior will of the said decedent which was executed and published on December 17, 1965, in which the following appeared:

"At the time of the death of my late husband, Frank A. Hartley, Sr., my said husband and I were jointly indebted to Industrial Valley Plumbing and Heating Supply Company (formerly known as Sacks Bros. Berwyn P. & H. Supply Co., Inc.) in the amount of approximately $13,000. To the extent that such indebtedness is not liquidated during my lifetime, I direct that my executors liquidate such obligation promptly after my death. In connection therewith, I direct that the real estate located at 3 Crumley Avenue, Malvern, Pennsylvania and 162 Jordan Road, Somers Point, New Jersey be sold and the proceeds utilized to pay off such obligation."

A letter of instruction from decedent to her attorney concerning the preparation of that will was also offered.

Concerning the amount of the claim, claimant offered the testimony of one Pauline Kirk, who testified that since 1969 she has been employed by In-

dustrial Valley Plumbing and Heating Supply Company in the capacity of bookkeeper. She identified certain documentary evidence which was offered which she said was taken from the records of claimant. These records indicate that over a period from early January 1964, until November 27, 1965, Frank A. Hartley, Sr., of 3 Crumley Avenue, Malvern, Pa., had dealings with the claimant consisting of the purchase of various plumbing supplies and that as of the latter date the balance due on such account was $10,413.62. Those records also indicate that after December 17, 1965, the date of the above-quoted will, no payments were received on account of said indebtedness.

The letter of decedent to her attorney was a confidential communication concerning which decedent's privilege against disclosure could be invoked by her personal representative on this record: Brown, Pennsylvania Evidence, 267. However, the will itself is not of that category. It was executed and published by decedent. Consequently, statements of fact contained therein in the nature of admissions on the part of decedent are here admissible as evidence. See Brown, supra, at page 132.

In that will, decedent admitted that at the time of her husband's death he and she were 'jointly indebted" to claimant in the amount of approximately $13,000. Since that will was later revoked by her last will, that which follows that admission, which is testamentary in character, cannot here be turned to claimant's advantage.

Neither can the content of that will be considered a promise to pay the debt or defalcation of another. There is no evidence that the promise was communicated to this creditor. Without a promisee, there can be no promise. But, even if the statement in question

had been communicated to the creditor as a promise to pay the debt of her husband, it could not now be enforced. There was no consideration to support the promise. Without consideration, such a promise is unenforceable.

Decedent admitted the existence of a joint debt. In the assertion of such a claim, suit must be brought against all those whose liability is solely joint: Pennsylvania Rule of Civil Procedure 2227(a); Mintz v. Tri-County Natural Gas Company, 259 Pa. 477 (1918); Supreme Court O. C. Rules section 3, Rule 1. Since this claimant has not asserted the instant claim against those jointly liable, it must here be dismissed for want of the joinder of a necessary party. It is so ordered.